Keith J. Miller
Bradley A. Suiters
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
Tel: (973) 690-5400
kmiller@rwmlegal.com
bsuiters@rwmlegal.com

*Attorneys for Plaintiff Gilead Sciences, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GILEAD SCIENCES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SABA ILAC SANAYI VE TICARET A.S.,<br><br><br>Defendant. | Civil Action No. |

## PLAINTIFF GILEAD SCIENCES, INC.'S
## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Gilead Sciences, Inc. ("Gilead" or "Plaintiff"), by its undersigned attorneys, hereby alleges as follows:

### NATURE OF THE ACTION

1. This is an action for patent infringement arising under the patent laws of the U.S., Title 35, United States Code, against Defendant SABA Ilac Sanayi ve Ticaret A.S. ("Saba"). This

action arises out of Saba's filing of an Abbreviated New Drug Application ("ANDA") with the United States Food and Drug Administration ("FDA").

2.    Saba seeks approval to market a generic version of Gilead's product, VEMLIDY®, containing tenofovir alafenamide ("TAF"), prior to the expiration of U.S. Patent Nos. 8,754,065 and 9,296,769 (collectively, the "Patents-In-Suit").  Gilead attaches hereto a true and accurate copy of each of the Patents-In-Suit as Exhibits A-B.

## PARTIES

### *Plaintiff*

3.    Gilead is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 333 Lakeside Drive, Foster City, California 94404.

4.    Gilead is a research-based pharmaceutical company that invents, develops, and brings to market revolutionary pharmaceutical products in areas of unmet medical need, including treatments for human immunodeficiency virus ("HIV"), hepatitis B virus ("HBV"), hepatitis C virus ("HCV"), hepatitis delta virus ("HDV"), liver diseases, serious cardiovascular and respiratory diseases, and cancer.  Gilead's portfolio of products includes treatments for HBV and HIV using the drug TAF.  Gilead sells a TAF-containing pharmaceutical under the registered trademark VEMLIDY in this District and throughout the United States.

### *Defendant*

5.    On information and belief, Saba is organized and existing under the laws of Turkey, with its principal place of business at Halkali Merkez Mah., Basin Ekspres Cad. No. 1, Kucukcekmece, Istanbul, Turkey 34303.

6.      On information and belief, Saba itself and through its subsidiaries, affiliates, and/or agents, manufactures, distributes, and/or imports generic pharmaceutical products for sale and use throughout the United States, including in this District.

7.      On information and belief, Saba prepared and filed ANDA No. 220362 (the "VEMLIDY ANDA"), seeking approval to manufacture, import, market, and/or sell a generic version of Gilead's VEMLIDY product (the "VEMLIDY ANDA Product") in the United States, including in this District, upon FDA approval of Saba's VEMLIDY ANDA.

## JURISDICTION AND VENUE

8.      This action arises under the patent laws of the United States of America, 35 U.S.C. § 100 et seq., including §§ 271(e)(2), 271(a), 271(b), 271(c), 271(g), and 28 U.S.C. §§ 2201 and 2202.  This Court has jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

9.      The Court also has jurisdiction to adjudicate this action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.  An actual, substantial, and justiciable controversy exists between Gilead and Saba of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding the parties' adverse legal interests with respect to the Patents-In-Suit.

### *Jurisdiction and Venue for Defendant*

10.      This Court has personal jurisdiction over Saba by virtue of, *inter alia*, its systematic and continuous contacts with this jurisdiction, as alleged herein.  On information and belief, either directly or through its subsidiaries, agents, and/or affiliates, Saba is in the business of manufacturing, selling, offering for sale, marketing, distributing, and/or importing generic versions of pharmaceutical products in the United States, including New Jersey.  On information and belief, Saba derives or intends to derive substantial revenue from the sale of those products in New Jersey and has availed itself of the privilege of conducting business within New Jersey.

11.     On information and belief, Saba is a pharmaceutical company that "exist[s] to offer innovative and diversified rang[e] of products with a high quality experience enabling healthy life opportunity to be available to everyone on a global scale," including within New Jersey.  *See* https://www.sabailac.com.tr/%20en/mission-vision (last accessed March 27, 2026).

12.     This Court also has personal jurisdiction because Saba has filed its VEMLIDY ANDA, seeking approval from the FDA to market and sell Saba's VEMLIDY ANDA Product throughout the United States, including in New Jersey.  On information and belief, Saba intends to commercially manufacture, use, and sell Saba's VEMLIDY ANDA Product upon receiving FDA approval.  On information and belief, upon FDA approval of Saba's VEMLIDY ANDA, Saba's VEMLIDY ANDA Product will, among other things, be marketed, distributed and sold in New Jersey, and/or prescribed by physicians practicing and dispensed by pharmacies located within New Jersey, all of which would have a substantial effect on New Jersey.  By filing its VEMLIDY ANDA, Saba has made clear that it intends to use its distribution channels to direct sales of Saba's VEMLIDY ANDA Product into New Jersey.

13.     Further, this Court has personal jurisdiction over Saba because Saba has previously been sued in this district and has not challenged personal jurisdiction, and Saba has affirmatively availed itself of this Court's jurisdiction by filing counterclaims in this district.  *See, e.g.*, *Nexus Pharms., LLC v. Saba Ilac Sanayi Ve Ticaret A.S.*, No. 2:25-cv-14927, D.I. 25 (D.N.J Dec. 11, 2025); *Bausch & Lomb Inc. et al. v. Saba Ilac Sanayi Ve Ticaret A.S.*, No. 2:25-cv-15127, D.I. 16 (D.N.J. Dec. 1, 2025).

14.     Alternatively, this Court may exercise personal jurisdiction over Saba pursuant to Federal Rule of Civil Procedure 4(k)(2) because: (a) Gilead's claims arise under federal law; (b) Saba is a foreign company not subject to personal jurisdiction in the courts of any state; and (c)

Saba has sufficient contacts with the United States as a whole such that this Court's exercise of jurisdiction over Saba satisfies due process.

15.    Venue is proper in this Court under 28 U.S.C. § 1391(c)(3) because Saba is a foreign corporation and may be sued in any judicial district in the United States in which it is subject to the court's personal jurisdiction, including in this District.

## PATENTS-IN-SUIT

16.    On June 17, 2014, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 8,754,065 (the "'065 patent"), titled, "Tenofovir Alafenamide Hemifumarate."  A true and correct copy of the '065 patent is attached hereto as Exhibit A.  The claims of the '065 patent are valid, enforceable, and not expired.  Gilead Sciences, Inc. is the assignee of the '065 patent.

17.    On March 29, 2016, the U.S. Patent and Trademark Office duly and legally issued U.S. Patent No. 9,296,769 (the "'769 patent"), titled, "Tenofovir Alafenamide Hemifumarate."  A true and correct copy of the '769 patent is attached hereto as Exhibit B.  The claims of the '769 patent are valid, enforceable, and not expired.  Gilead Sciences, Inc. is the assignee of the '769 patent.

## ACTS GIVING RISE TO THIS ACTION

### *VEMLIDY*

18.    Gilead holds approved New Drug Application ("NDA") No. 208464 for 25 mg tablets containing tenofovir alafenamide for the treatment of chronic hepatitis B virus infection in adults with compensated liver disease, as further described in the VEMLIDY label.

19.    Gilead markets the tablets approved under NDA No. 208464 in the United States under the registered trademark VEMLIDY.  FDA's publication *Approved Drug Products with*

5

*Therapeutic Equivalence Evaluations* (commonly known as the "Orange Book") identifies the following patents for VEMLIDY:  U.S. Patent Nos. 8,754,065 and 9,296,769.

20.     Gilead describes its VEMLIDY tablets as containing tenofovir alafenamide fumarate with the following empirical and structural formulas:

21.     At least one claim of each of the Patents-In-Suit (both of which are listed in the Orange Book) covers VEMLIDY, or approved methods of using VEMLIDY.

22.     Saba filed Saba's VEMLIDY ANDA listing VEMLIDY as the reference listed drug.

### Saba's Acts Regarding VEMLIDY

23.     On information and belief, Saba submitted to the FDA its VEMLIDY ANDA under Section 505(j) of the Federal Food, Drug, and Cosmetic Act (the "FFDCA") (21 U.S.C. § 355(j)), seeking the FDA's approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of Saba's VEMLIDY ANDA Product before the expiration of the Patents-In-Suit.  On information and belief, the FDA assigned Saba ANDA No. 220362.

24.     On information and belief, Saba sent a letter dated February 11, 2026 to Gilead ("Saba's VEMLIDY Notice Letter"), purporting to be a notice pursuant to 21 U.S.C.

§ 355(j)(2)(B). Saba's VEMLIDY Notice Letter states that Saba's VEMLIDY ANDA includes a certification pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) with respect to the Patents-In-Suit.

25.    Gilead received Saba's VEMLIDY Notice Letter on or about February 13, 2025.

26.    This action is being commenced before the expiration of 45 days from the date Gilead received Saba's VEMLIDY Notice Letter, which triggers a stay of FDA approval of Saba's VEMLIDY ANDA pursuant to 21 U.S.C. § 355(j)(5)(B)(iii).

27.    By filing its VEMLIDY ANDA, Saba has necessarily represented to FDA that its VEMLIDY ANDA Product has the same active ingredient as VEMLIDY; has the same dosage form and strength as VEMLIDY; and is bioequivalent to VEMLIDY.

28.    On information and belief, Saba is seeking approval to market its VEMLIDY ANDA Product for the same approved indication as VEMLIDY.

29.    On information and belief, Saba's proposed label for its VEMLIDY ANDA Product ("Saba's Proposed VEMLIDY Label") will refer to the product as, *inter alia*, a hepatitis B virus nucleoside analog reverse transcriptase inhibitor for the treatment of chronic hepatitis B infection in adults with compensated liver disease, and will describe the tablet strength of Saba's VEMLIDY ANDA Product as 25 mg.

30.    On information and belief, Saba's Proposed VEMLIDY Label will instruct physicians and healthcare providers to administer Saba's VEMLIDY ANDA Product for, *inter alia*, the treatment of chronic hepatitis B infection in adults with compensated liver disease.

31.    On information and belief, Saba's Proposed VEMLIDY Label will contain data relating to the treatment of patients with hepatitis B infection, obtained from clinical studies involving, *inter alia*, VEMLIDY.

32. Saba's VEMLIDY Notice Letter did not dispute infringement of any claim of the '065 patent or the '769 patent (other than to allege the claims are invalid).

### COUNTS I–IV FOR PATENT INFRINGEMENT

### Count I:  Infringement of the '065 Patent under 35 U.S.C. § 271(e)(2)

33. Gilead realleges the foregoing paragraphs as if fully set forth herein.

34. Pursuant to 35 U.S.C. § 271(e)(2)(A), Saba has committed an act of infringement of the '065 patent by submitting Saba's VEMLIDY ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Saba's VEMLIDY ANDA Product in or into the United States prior to the expiration of the '065 patent.

35. Saba's commercial manufacture, use, offer for sale, sale, and/or importation of the VEMLIDY ANDA Product prior to the expiration of the '065 patent, and its inducement of and/or contribution to such conduct, would constitute infringement of at least one of the claims of the '065 patent either literally or under the doctrine of equivalents, including but not limited to claim 1.

36. On information and belief, for example, the VEMLIDY ANDA Product contains tenofovir alafenamide hemifumarate and thus falls within the scope of at least claim 1 of the '065 patent, either literally or under the doctrine of equivalents.

37. The commercial manufacture, importation, use, sale, or offer for sale of Saba's VEMLIDY ANDA Product in violation of Gilead's patent rights will cause harm to Gilead for which damages are inadequate.

38. Unless and until Saba is enjoined from infringing the '065 patent, Gilead will suffer substantial and irreparable harm for which there is no remedy at law.

**Count II:  Declaratory Judgment of Infringement of the '065 Patent under
35 U.S.C. §§ 271(a)–(c) and/or (g)**

39.    Gilead realleges the foregoing paragraphs as if fully set forth herein.

40.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

41.    There is an actual case or controversy such that the Court may entertain Gilead's request for declaratory relief consistent with Article III of the U.S. Constitution, and that actual case or controversy requires a declaration of rights by this Court.

42.    Saba has submitted to FDA an ANDA for a generic version of Gilead's VEMLIDY product.  According to Saba's VEMLIDY Notice Letter, Saba intends to commercially manufacture, use, offer for sale, sell, and/or import the VEMLIDY ANDA Product in or into the United States.

43.    Although FDA has not approved Saba's VEMLIDY ANDA, Saba has made, and will continue to make, substantial preparation in the United States to commercially manufacture, use, sell, offer to sell, and/or import the VEMLIDY ANDA Product.

44.    Saba's actions indicate that it does not intend to change its course of conduct.

45.    On information and belief, upon FDA approval of Saba's VEMLIDY ANDA, Saba will infringe one or more claims of the '065 patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, by making, using, offering to sell, and/or selling the VEMLIDY ANDA Product, and/or importing said product into the United States, and/or by actively inducing and contributing to infringement, under 35 U.S.C. §§ 271(a), (b), (c) and/or (g), unless enjoined by the Court.

46.    On information and belief, for example, Saba's VEMLIDY ANDA Product contains tenofovir alafenamide hemifumarate and thus falls within the scope of at least claim 1 of the '065 patent, either literally or under the doctrine of equivalents.

47.    Saba has actual knowledge of the '065 patent.

48.    On information and belief, Saba became aware of the '065 patent no later than the date on which that patent was issued by the Patent Office and/or listed in the Orange Book for Gilead's VEMLIDY product.

49.    On information and belief, Saba's efforts to make, use, sell, offer for sale, and/or import its VEMLIDY ANDA Product have been made and will be made with full knowledge of the '065 patent and without a reasonable basis for believing that it would not be liable for actively inducing or contributing to the infringement of the '065 patent.

50.    On information and belief, Saba's VEMLIDY ANDA Product, if FDA-approved, will be commercially manufactured, used, imported, offered for sale, and/or sold by Saba in the United States by it or on its behalf.

51.    On information and belief, Saba's Proposed VEMLIDY Label will include directions and instructions that instruct physicians and healthcare providers to administer Saba's VEMLIDY ANDA Product in order to treat, *inter alia*, hepatitis B infection in accordance with the methods described/claimed in the '065 patent.

52.    On information and belief, physicians and healthcare providers will administer Saba's VEMLIDY ANDA Product in the United States according to the directions and instructions in the Saba's Proposed VEMLIDY Label, and such administration will constitute direct infringement of at least one claim of the '065 patent.

53.    On information and belief, at least through its Proposed VEMLIDY Label, Saba will encourage physicians and healthcare providers to administer Saba's VEMLIDY ANDA Product in order to treat, *inter alia*, hepatitis B infection in accordance with the methods described/claimed in the '065 patent, and Saba will know that such conduct will occur.

10

54.	On information and belief, Saba will actively induce, encourage, aid, and abet that conduct by physicians and healthcare providers with knowledge and specific intent that the conduct infringe the '065 patent.

55.	Through at least the foregoing actions, Saba will actively induce the infringement of at least one claim of the '065 patent.

56.	On information and belief, Saba knows that Saba's VEMLIDY ANDA Product will be especially made or adapted for use in infringing the '065 patent and that Saba's VEMLIDY ANDA Product is not suitable for substantial non-infringing use.

57.	The commercial manufacture, use, sale, offer for sale, and/or importation of Saba's VEMLIDY ANDA Product will contribute to the actual infringement of the '065 patent.

58.	On information and belief, Saba knows or will know that its offer for sale, sale and/or importation of its VEMLIDY ANDA Product will contribute to the actual infringement of the '065 patent.

59.	Through at least the foregoing actions, Saba will contribute to the infringement of at least one claim of the '065 patent.

60.	On information and belief, if Saba's VEMLIDY ANDA is approved by the FDA, Saba will make its VEMLIDY ANDA Product using a process covered by one or more claims of the '065 patent and import that product into the United States and/or offer to sell, sell or use that product in the United States.

61.	On information and belief, Saba's VEMLIDY ANDA Product will not be materially changed by a subsequent process nor will Saba's VEMLIDY ANDA Product become a trivial and nonessential component of another product.

62.     Through at least the foregoing actions, Saba will infringe at least one claim of the '065 patent under 35 U.S.C. § 271(g).

63.     Gilead is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Saba's VEMLIDY ANDA Product by Saba prior to the expiration of the '065 patent will constitute direct infringement and/or will induce and/or contribute to the actual and direct infringement of the '065 patent.

64.     The commercial manufacture, importation, use, sale, or offer for sale of Saba's VEMLIDY ANDA Product in violation of Gilead's patent rights will cause harm to Gilead for which damages are inadequate.

65.     Unless and until Saba is enjoined from infringing the '065 patent, Gilead will suffer substantial and irreparable harm for which there is no remedy at law.

### Count III:  Infringement of the '769 Patent under 35 U.S.C. § 271(e)(2)

66.     Gilead realleges the foregoing paragraphs as if fully set forth herein.

67.     Pursuant to 35 U.S.C. § 271(e)(2)(A), Saba has committed an act of infringement of the '769 patent by submitting Saba's VEMLIDY ANDA to obtain approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation of Saba's VEMLIDY ANDA Product in or into the United States prior to the expiration of the '769 patent.

68.     Saba's commercial manufacture, use, offer for sale, sale, and/or importation of the VEMLIDY ANDA Product prior to the expiration of the '769 patent, and its inducement of and/or contribution to such conduct, would constitute infringement of at least one of the claims of the '769 patent either literally or under the doctrine of equivalents, including but not limited to claim 1.

69.     On information and belief, for example, the VEMLIDY ANDA Product contains a composition comprising tenofovir alafenamide hemifumarate, wherein the composition

12

comprises less than about 5% by weight of tenofovir alafenamide monofumarate, and thus falls within the scope of at least claim 1 of the '769 patent, either literally or under the doctrine of equivalents.

70.    The commercial manufacture, importation, use, sale, or offer for sale of Saba's VEMLIDY ANDA Product in violation of Gilead's patent rights will cause harm to Gilead for which damages are inadequate.

71.    Unless and until Saba is enjoined from infringing the '769 patent, Gilead will suffer substantial and irreparable harm for which there is no remedy at law.

**Count IV:  Declaratory Judgment of Infringement of the '769 Patent under 35 U.S.C. §§ 271(a)–(c) and/or (g)**

72.    Gilead realleges the foregoing paragraphs as if fully set forth herein.

73.    This claim arises under the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

74.    There is an actual case or controversy such that the Court may entertain Gilead's request for declaratory relief consistent with Article III of the U.S. Constitution, and that actual case or controversy requires a declaration of rights by this Court.

75.    Saba has submitted to FDA an ANDA for a generic version of Gilead's VEMLIDY pharmaceutical product.  According to Saba's VEMLIDY Notice Letter, Saba intends to commercially manufacture, use, offer for sale, sell, and/or import the VEMLIDY ANDA Product in or into the United States.

76.    Although FDA has not approved Saba's VEMLIDY ANDA, Saba has made, and will continue to make, substantial preparation in the United States to commercially manufacture, use, sell, offer to sell, and/or import the VEMLIDY ANDA Product.

77.    Saba's actions indicate that it does not intend to change its course of conduct.

78.     On information and belief, upon FDA approval of Saba's VEMLIDY ANDA, Saba will infringe one or more claims of the '769 patent, either literally or under the doctrine of equivalents, including but not limited to claim 1, by making, using, offering to sell, and/or selling the VEMLIDY ANDA Product in the United States, and/or importing said product into the United States, and/or by actively inducing and contributing to infringement of the '769 patent by others, under 35 U.S.C. §§ 271(a), (b), (c) and/or (g), unless enjoined by the Court.

79.     On information and belief, for example, Saba's VEMLIDY ANDA Product contains a composition comprising tenofovir alafenamide hemifumarate, wherein the composition comprises less than about 5% by weight of tenofovir alafenamide monofumarate, and thus falls within the scope of at least claim 1 of the '769 patent, either literally or under the doctrine of equivalents.

80.     Saba has actual knowledge of the '769 patent.

81.     On information and belief, Saba became aware of the '769 patent no later than the date on which that patent was issued by the Patent Office and/or listed in the Orange Book for Gilead's VEMLIDY product.

82.     On information and belief, Saba's efforts to make, use, sell, offer for sale, and/or import its VEMLIDY ANDA Product have been made and will be made with full knowledge of the '769 patent and without a reasonable basis for believing that it would not be liable for actively inducing or contributing to the infringement of the '769 patent.

83.     On information and belief, Saba's VEMLIDY ANDA Product, if FDA-approved, will be commercially manufactured, used, imported, offered for sale, and/or sold by Saba in the United States by it or on its behalf.

14

84. On information and belief, Saba's Proposed VEMLIDY Label will include directions and instructions that instruct physicians and healthcare providers to administer Saba's VEMLIDY ANDA Product in order to treat, *inter alia*, hepatitis B infection in accordance with the methods described/claimed in the '769 patent.

85. On information and belief, physicians and healthcare providers will administer Saba's VEMLIDY ANDA Product in the United States according to the directions and instructions in the Saba's Proposed VEMLIDY Label, and such administration will constitute direct infringement of at least one claim of the '769 patent.

86. On information and belief, at least through its Proposed VEMLIDY Label, Saba will encourage physicians and healthcare providers to administer Saba's VEMLIDY ANDA Product in order to treat, *inter alia*, hepatitis B infection in accordance with the methods described/claimed in the '769 patent, and Saba will know that such conduct will occur.

87. On information and belief, Saba will actively induce, encourage, aid, and abet that conduct by physicians and healthcare providers with knowledge and specific intent that the conduct infringe the '769 patent.

88. Through at least the foregoing actions, Saba will actively induce the infringement of at least one claim of the '769 patent.

89. On information and belief, Saba knows or will know that Saba's VEMLIDY ANDA Product will be especially made or adapted for use in infringing the '769 patent and that Saba's VEMLIDY ANDA Product is not suitable for substantial non-infringing use.

90. The commercial manufacture, use, sale, offer for sale, and/or importation of Saba's VEMLIDY ANDA Product will contribute to the actual infringement of the '769 patent.

91. On information and belief, Saba knows or will know that its offer for sale, sale and/or importation of its VEMLIDY ANDA Product will contribute to the actual infringement of the '769 patent.

92. Through at least the foregoing actions, Saba will contribute to the infringement of at least one claim of the '769 patent.

93. On information and belief, if Saba's VEMLIDY ANDA is approved by the FDA, Saba will make its VEMLIDY ANDA Product using a process covered by one or more claims of the '769 patent and import that product into the United States and/or offer to sell, sell or use that product in the United States.

94. On information and belief, Saba's VEMLIDY ANDA Product will not be materially changed by a subsequent process nor will Saba's VEMLIDY ANDA Product become a trivial and nonessential component of another product.

95. Through at least the foregoing actions, Saba will infringe at least one claim of the '769 patent under 35 U.S.C. § 271(g).

96. Gilead is entitled to a declaratory judgment that future manufacture, use, offer for sale, sale, and/or importation of Saba's VEMLIDY ANDA Product by Saba prior to the expiration of the '769 patent will constitute direct infringement and/or will induce and/or contribute to the actual and direct infringement of the '769 patent.

97. The commercial manufacture, importation, use, sale, or offer for sale of Saba's VEMLIDY ANDA Product in violation of Gilead's patent rights will cause harm to Gilead for which damages are inadequate.

98. Unless and until Saba is enjoined from infringing the '769 patent, Gilead will suffer substantial and irreparable harm for which there is no remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Gilead prays that this Court grant the following relief:

A)      A judgment that Saba has infringed the '065 patent and the '769 patent by submitting its VEMLIDY ANDA under Section 505(j) of the FFDCA, and that the making, using, offering to sell, and/or selling within the United States, and/or importation into the United States of its VEMLIDY ANDA Product will constitute an infringement of the '065 patent and '769 patent;

B)      A judgment entered declaring that the Patents-In-Suit have not been proven invalid or unenforceable;

C)      An order pursuant to 35 U.S.C. § 271(e)(4)(A) providing that the effective date of any FDA approval of the VEMLIDY ANDA shall be a date which is not earlier than the day after the latest expiration date of the '065 patent and the '769 patent, as extended by any applicable periods of exclusivity to which Gilead is or will be entitled;

D)      An order under 35 U.S.C. § 271(e)(4)(B) and/or 35 U.S.C. § 283 permanently enjoining Saba, its affiliates, subsidiaries, and each of its officers, agents, servants and employees and those acting in privity or concert with them, from making, using, offering to sell, and/or selling in the United States, and/or importing into the United States, the VEMLIDY ANDA Product until the day after the latest expiration date of the '065 patent and the '769 patent, including any extensions and/or additional periods of exclusivity to which Gilead is or will be entitled, and from otherwise infringing one or more claims of the '065 patent and the '769 patent;

E)      An order pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that Saba's commercial manufacture, use, offer for sale, sale, and/or importation of its VEMLIDY ANDA Product in or into the United States prior to the expiration of the '065 patent and the '769 patent (including such actions by their officers, agents, servants, employees, licensees, representatives, and attorneys, and

all other persons acting or attempting to act in active concert or participation with Saba or acting on Saba's behalf) will constitute infringement of the '065 patent and the '769 patent under 35 U.S.C. §§ 271 (a), (b), (c), and/or (g) and providing any further necessary or proper relief based on the Court's declaratory judgment or decree;

F)    Damages or other monetary relief under 35 U.S.C. §§ 271(a), (b), (c) and (e)(4)(c), and/or 35 U.S.C. § 284, including costs, fees, pre- and post-judgment interest, to Gilead if Saba engages in commercial manufacture, use, offers to sell, sale, and/or importation in or into the United States of its VEMLIDY ANDA Product prior to the latest expiration date of the '065 patent and the '769 patent, including any extensions and/or additional periods of exclusivity to which Gilead is or will be entitled;

G)    An order that this case is exceptional under 35 U.S.C. § 285, and that Gilead be awarded reasonable attorneys' fees and costs;

H)    Such other and further relief as this Court deems just and proper, including any appropriate relief under 35 U.S.C. § 285.

Respectfully submitted,


/s/ *Keith J. Miller*
Keith J. Miller
Bradley A. Suiters
ROBINSON MILLER LLC
Ironside Newark
110 Edison Place, Suite 302
Newark, NJ 07102
Tel: (973) 690-5400
kmiller@rwmlegal.com
bsuiters@rwmlegal.com

OF COUNSEL:

Charlotte Jacobsen
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
cjacobsen@gibsondunn.com

*Attorneys for Plaintiff Gilead Sciences, Inc.*

Christine Ranney
GIBSON, DUNN & CRUTCHER LLP
1900 Lawrence Street, Suite 3000
Denver, CO 80202-2642
Tel: (303) 298-5700
cranney@gibsondunn.com

Darish Huynh
Gibson, Dunn & Crutcher LLP
3161 Michelson Drive
Irvine, CA 92612-4412
Tel: (949) 451-3800
dhuynh@gibsondunn.com

March 27, 2026